Jon B. Fougner
Email: Jon@FougnerLaw.com
600 California Street, 11th Fl.
San Francisco, CA 94108
Telephone: (434) 623-2843
Facsimile: (206) 338-0783

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiff and the Proposed Classes*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JEFFREY KATZ CHIROPRACTIC, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>TIVITY HEALTH SUPPORT, LLC,<br><br>Defendant. | NO.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**CLASS ACTION** |

Plaintiff Jeffrey Katz Chiropractic, Inc. ("Plaintiff"), by his undersigned counsel, for this class action complaint against Tivity Health Support, LLC, and its present, former, and future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities ("Tivity" or "Defendant"), alleges as follows:

## I.   INTRODUCTION

1. <u>Nature of Action</u>.  Plaintiff, individually and as class representative for all others similarly situated, brings this action against Tivity for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*

## II.   PARTIES

2. Plaintiff is a corporation located in California, in this District.

3. Defendant is a Delaware limited liability company with its principal place of business in Franklin, Tennessee. It is doing business in California and throughout the United States.

### III. JURISDICTION AND VENUE

4. <u>Jurisdiction</u>. This Court has subject matter jurisdiction over Plaintiff's TCPA claims under 28 U.S.C. § 1331 because TCPA is a federal statute. *Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's UCL claim because it arises from the same nucleus of operative fact (Defendant's unsolicited facsimile advertisements sent to Plaintiff and putative class members), adds little complexity to the case, and does not seek money damages, so it is unlikely to predominate over the TCPA claims.

5. <u>Personal Jurisdiction</u>. This Court has personal jurisdiction over Defendant because (a) it has submitted to California jurisdiction by registering with the Secretary of State[1] to do business in this state and (b) a substantial part of the wrongful acts alleged in this Complaint—namely, the delivery of the illegal advertisements—occurred in California.

6. <u>Venue</u>. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Plaintiff is located in this District and a substantial part of the events giving rise to Plaintiff's claims—namely, the delivery of the illegal advertisements—occurred in this District.

7. <u>Intradistrict Assignment</u>. Assignment to this Division is proper pursuant to Civil L.R. 3-2(c)-(d) because a substantial part of the events or omissions that give rise to Plaintiff's claims—namely, the delivery of the illegal advertisements—occurred in the County of San Francisco.

### IV. THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

8. In 1991, Congress enacted the TCPA in response to a growing number of complaints regarding certain telemarketing practices.

9. The TCPA forbids sending unsolicited advertisements for goods or services via facsimile ("Junk Faxes"). 47 U.S.C. § 227(b)(1)(C).

---

[1] Tivity's registration with the California Secretary of State is as "Tivity Health Services, LLC."

1    10. The TCPA requires that even those fax advertisements being sent to those who
2  consented to their receipt, or with whom the advertiser has an established business relationship,
3  include an opt-out notice ("Opt-Out Notice"). *Id.* § 227(b)(2)(D).
4    11. In order to comply with the TCPA's Opt-Out Notice requirements, each Junk Fax
5  must include all of the following:
6    a) clear and conspicuous language on the first page of the advertisement stating that
7       facsimile recipients may request that the sender not send any future unsolicited
8       advertisements and specifically informing facsimile recipients that the failure to
9       comply with such a request within the shortest reasonable time as, determined by
10      the FCC, is unlawful;
11   b) a toll free phone that a recipient may use to submit a request to cease transmitting
12      facsimile advertisements to the recipient; and
13   c) a facsimile number that a recipient may use to submit a request to cease
14      transmitting facsimile advertisements to the recipient.
15  47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(4)(iii)-(v).
16    12. The TCPA provides a private right of action to recipients of illegal Junk Faxes:
17      A person or entity may, if otherwise permitted by the laws or rules
18      of court of a State, bring in an appropriate court of that State, (A)
19      an action based on a violation of [47 U.S.C. § 227(b)] or the
20      regulations prescribed under [it] to enjoin such violation, (B) an
21      action to recover for actual monetary loss from such a violation, or
22      to receiver $500 in damages for each violation, whichever is
23      greater, or (C) both such actions.
24  47 U.S.C. § 227(b)(3).

V.    FACTUAL ALLEGATIONS

A.    **Factual Allegations Regarding Defendant and Its Spam Fax Campaign**

27    12. Defendant's business is a wellness network.
28

13. Defendant's business model is to run a two-sided marketplace, connecting buyers and sellers of health-care services.

14. Defendant builds up liquidity in its marketplace by acquiring consumers (on the one side) and producers (on the other side).

15. Defendant sells consumers discounted access to the health-care practitioners in Defendant's network. Consumers pay Defendant in the form of contractually mandated recurring out-of-pocket payments.

16. Defendant sells practitioners access to new customers in its network. Practitioners pay Defendant in the form of contractually mandated discounts afforded to consumers in Defendant's network.

17. A chiropractor in Defendant's network must discount a first patient's visit by $20 and must discount all subsequent visits by 10-30%.

18. When Defendant sends Junk Faxes to practitioners, its goal is to sell them on its network, thereby increasing Defendant's sales and profits.

19. Recipients of Defendant's Junk Faxes, including Plaintiff, are health care professionals or entities through which such professionals practice that have never consented to receive them and that have no preexisting business relationship with Defendant.

20. Many of these recipients, like Plaintiff, provide chiropractic care.

**B.      Factual Allegations Regarding Plaintiff**

21. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

22. On April 9, 2018, Tivity sent Plaintiff the following facsimile advertisement:

```
TivityHealth1              4/9/2018 8:30:20 PM   PAGE   2/002    Fax Server
TO:Provider   COMPANY:
```

**Dear Practitioner,**

WholeHealth Networks, Inc. (WHN), a subsidiary of Tivity Health Support, LLC is currently looking for Chiropractors, Acupuncturists, and Massage Therapist in your area to join our network.

WHN has successfully developed and managed national provider networks for our health plan partners for over 25 years. Joining today will help build your business, increase the visibility of your practice while providing alternative medicine in your community.

We are recruiting for our Health and Fitness product and for Humana Covered Acupuncture for Medicare Advantage members.

https://www.wholehealthpro.com/

WHOLE HEALTH PRO   HOME   FEATURES   PROGRAMS   CREDENTIALING   CONTACT US   REGISTER   LOGIN    tivity HEALTH

**Announcements**
- Grow your business! Click here to get started:  WholeHealth Living Network Application
- View an introductory overview of the new features: Educational Reference
- Navigate back to the old WholeHealthPro site: Legacy WholeHealthPro Portal

A secure online resource portal
for our participating practitioners.
A convenient way for our practitioners to conduct daily office operations.



Access to the WHN authorization web portal



View the WHN Provider Manual

I would like to schedule time to follow up with you to determine which contractual document is needed to join our network.
What is a good day and time to follow up?

Thank you,

Melissa Gorsuch • Recruiter – WHL Provider Network Recruiting
Tivity Health • tivityhealth.com
• 480.692.2724  • 1445 S. Spectrum Blvd., Chandler, AZ 85286
Melissa.Gorsuch@tivityhealth.com

  Our Values
• Customer-Focused • Trust • Excellence
• Provocative • Empowerment with Results

23. The facsimile advertisement touted that Plaintiff would "build [its] business" by entering into a commercial transaction with Defendant.

24. The facsimile advertisement asked Plaintiff to schedule a sales teleconference with Defendant. ("What is a good day and time to follow up?")

25. The facsimile advertisement announced the commercial availability of a service: Defendant's network.

26. The facsimile advertisement gives several indications that it was sent by Tivity. For example:

    a.    Its header says "TivityHealth."

    b.    Its signature block contains the Tivity logo, trade name and URL.

27. The facsimile advertisement gives several indications that it was sent *en masse*. For example:

    a.    It is addressed to "Provider COMPANY" rather than, say, "Jeffrey Katz Chiropractic, Inc."

    b.    It is addressed "Dear Practitioner" rather than, say, "Dear Dr. Katz."

    c.    It states, broadly and generically, that Defendant is seeking "Chiropractors, Acupuncturists, and Massage Therapist in your area to join our network."

    d.    Not one word of it is personalized to Plaintiff or Dr. Katz.

28. The facsimile advertisement was unsolicited and impersonal and therefore true to Defendant's stated core value of being "provocative."

29. Plaintiff has never been a customer of Tivity, nor has it ever been interested in being a customer of Tivity.

30. Plaintiff did not provide permission to Tivity to send it the facsimile advertisement.

31. The fax wasted Plaintiff's staff's time.

32. The fax consumed Plaintiff's paper, toner and electricity.

33. The fax depreciated Plaintiff's fax machine.

34. The fax occupied Plaintiff's fax line, making it unavailable for legitimate medical and professional communications.

35. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Tivity because their privacy has been violated, they were subjected to annoying and harassing faxes that constituted a nuisance, their paper, toner and electricity were consumed, their fax machines were depreciated, and their fax lines were rendered unavailable for legitimate communication.

## VI.   CLASS ACTION ALLEGATIONS

36. <u>Class Definition</u>.  Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this case as a class action on behalf of a national class ("National Class") and a California sub-class ("California Sub-Class") (collectively, "Classes").

37. The National Class is defined as follows:

> All persons and entities to whom: (a) Tivity and/or a third party acting on Tivity's behalf sent one or more faxes; (b) promoting WholeHealth Networks, Inc.; (c) without an Opt-Out Notice; (d) at any time in the period that begins four years before the date of filing this Complaint and ends at the date of trial.

38. The California Sub-Class is defined as all National Class members whose fax machines have a California area code.

39. <u>Exclusions</u>: Excluded from the Classes are Defendant, any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant, Defendant's legal representatives, assignees, and successors, the judge(s) to whom this case is assigned and the immediate family members of all of the foregoing.

40. <u>Numerosity</u>.  The Classes are so numerous that joinder of all members is impracticable.  On information and belief, judging from the generic nature of the fax, each Class has more than 100 members.  It will be more efficient for the Court and the parties to resolve these alleged violations of the TCPA in one fell swoop than in hundreds or thousands of individual trials.

41. <u>Commonality</u>.  There are many questions of law and fact that have the same answer for class members and the answers to which will be determinative of the outcome of the litigation. That is no surprise, given the completely generic nature and content of the fax. The common questions include:

    a.    Was it Defendant, or someone impersonating Defendant and infringing its trademarks, that sent the faxes?

    b.    Did Defendant send the faxes in order to increase its sales and profits?

    c.    Did the faxes contain an Opt-Out Notice?

    d.    Did Defendant have a practice of obtaining consent before sending facsimile advertisements?

    e.    Does the fact that Defendant's Junk Faxes promoted a sales network rather than a widget make them any less distracting, annoying, or prone to consuming paper and toner and to occupying the medical professional's fax line?

    f.    Did the faxes violate the TCPA?

    g.    Were Defendant's violations knowing or willful?

    h.    Should Defendant be enjoined from sending medical professionals unsolicited facsimile advertisements?

42. <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the Classes. Plaintiff's claims and the claims of the Classes arise from identical or similar boilerplate faxes and are based on the same provisions of the TCPA.

43. <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions and TCPA class actions. Plaintiff and its counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. Neither Plaintiff nor its counsel have interests that are contrary to or that conflict with those of the proposed Classes.

44. <u>Predominance</u>.  Tivity has engaged in a common course of conduct toward Plaintiff and members of the Classes. The common issues arising from this conduct that affect Plaintiff and members of the Classes predominate over any individual issues.

45. <u>Superiority</u>.  A class action is the superior method for the fair and efficient adjudication of this controversy.  Classwide relief is essential to compel Tivity to comply with the TCPA. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Tivity is small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and because the TCPA articulates bright-line standards for liability and damages. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

46. <u>Injunctive and Declaratory Relief is Appropriate</u>.  Tivity has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a classwide basis.

## VII.   FIRST CLAIM FOR RELIEF

**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b))**

**On Behalf of Plaintiff and the National Class**

47. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

48. The foregoing acts and omissions of Tivity and/or its affiliates or agents, and/or other persons or entities acting on Tivity's behalf, constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(C), by sending unsolicited advertisements for goods and services via facsimile.

- 9 -

COMPL.
*Jeffrey Katz Chiropractic, Inc. v. Tivity Health Support, LLC*

49. Plaintiff and members of the National Class are entitled to an award of $500 in damages for each violation of the statute or up to $1,500 for each willful or knowing violation. 47 U.S.C. § 227(b)(3).

50. Plaintiff and members of the National Class are also entitled to and do seek an injunction prohibiting Tivity and/or its affiliates, agents, and/or other persons or entities acting on its behalf from sending medical professionals unsolicited facsimile advertisements.

## VIII.   SECOND CLAIM FOR RELIEF

**(Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

**On Behalf of Plaintiff and the California Sub-Class**

51. Defendant's TCPA violations targeted people and businesses in the State of California, in violation of the "unlawful" prong of the UCL. *See O'Connor v. Lyft, Inc.*, No. 16-cv-00351-JSW, 2016 U.S. Dist. LEXIS 153705, at *14-15 (N.D. Cal. Apr. 14, 2016) (violating the TCPA violates the UCL).

52. Defendant's conduct violated the "unfair" prong of the UCL. It was unfair for Plaintiff's work—providing medical care to Californians—to be interrupted by Defendant's Junk Fax. It was unfair for California patients, who count on their healthcare professionals to be able to communicate with the patient's insurer and the professional's colleagues, suppliers and regulators, that such communications were impeded by Defendant's Junk Faxes. It is unfair that healthcare networks that sell their services without spam have to compete against Defendant, ultimately harming consumers. *See State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (2d Dist. 1996) (unfair prong of the UCL "is intentionally broad, thus allowing courts maximum discretion").

53. As a result of the challenged conduct, Plaintiff lost money: the incremental amount it had to pay its electrical utility for the energy consumed by receipt of the fax.

54. As a result of the challenge conduct, Plaintiff lost property: paper and toner.

55. Plaintiff and members of the California Sub-Class are also entitled to and do seek an injunction prohibiting Tivity and/or its affiliates, agents, and/or other persons or entities acting on its behalf from sending California medical professionals unsolicited facsimile advertisements.

56. Such an injunction will enforce an important right affecting the public interest and confer a significant benefit, whether pecuniary or non-pecuniary, on a large class of persons. Private enforcement is necessary and places a disproportionate financial burden on Plaintiff in relation to Plaintiff's stake in the matter, because the fraction of Defendant's Junk Faxes that were directed to Plaintiff is small.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of all members of the Classes, prays for judgment against Tivity as follows:

    A.    Certification of the proposed Classes;

    B.    Appointment of Plaintiff as representative of the Classes;

    C.    Appointment of the undersigned counsel as counsel for the Classes;

    D.    A declaration that actions complained of herein by Tivity and/or its affiliates, agents, or related entities violate the TCPA and UCL;

    E.    An order enjoining Tivity and its affiliates, agents and related entities from sending medical professionals unsolicited facsimile advertisements;

    F.    An award to Plaintiff and the National Class of damages, as allowed by law;

    G.    An award to Plaintiff and the Classes of attorneys' fees and costs, as allowed by law, equity and/or California Code of Civil Procedure section 1021.5;

    H.    Leave to amend this Complaint to conform to the evidence presented at trial; and

    I.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

## X.   DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

## XI.   SIGNATURE ATTESTATION

The CM / ECF user filing this paper attests that concurrence in its filing has been obtained from its other signatories.

RESPECTFULLY SUBMITTED AND DATED this 1st day of September, 2018.

| | |
|---|---|
| 1 | |
| 2 | By: */s/ Jon B. Fougner* |
| | Jon B. Fougner |
| 3 | |
| 4 | Edward A. Broderick |
| | Email: ted@broderick-law.com |
| 5 | Anthony I. Paronich |
| | Email: anthony@broderick-law.com |
| 6 | BRODERICK & PARONICH, P.C. |
| 7 | 99 High Street, Suite 304 |
| | Boston, Massachusetts 02110 |
| 8 | Telephone:  (617) 738-7080 |
| | Facsimile:   (617) 830-0327 |
| 9 | *Subject to Pro Hac Vice* |
| 10 | |
| | Matthew P. McCue |
| 11 | E-mail: mmccue@massattorneys.net |
| | THE LAW OFFICE OF MATTHEW P. McCUE |
| 12 | 1 South Avenue, Suite 3 |
| 13 | Natick, Massachusetts  01760 |
| | Telephone:  (508) 655-1415 |
| 14 | Facsimile:   (508) 319-3077 |
| | *Subject to Pro Hac Vice* |
| 15 | |
| 16 | Andrew W. Heidarpour |
| | E-mail: AHeidarpour@HLFirm.com |
| 17 | HEIDARPOUR LAW FIRM, PLLC |
| | 1300 Pennsylvania Ave. NW, 190-318 |
| 18 | Washington, DC 20004 |
| 19 | Telephone: (202) 234-2727 |
| | *Subject to Pro Hac Vice* |